**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JOSEPH WAYNE EASTRIDGE, *et al.*** | ) | |
| **Petitioners,** | ) | |
| **v.** | ) | **Civil Action No. 00-3045 (RMC)** |
| **UNITED STATES OF AMERICA** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

After serving decades in prison for a murder they did not commit, Petitioners Joseph Wayne Eastridge, Joseph N. Sousa, and the Estate of Salvatore Infantolino, a.k.a. Michael A. Damien, now petition for a Certificate of Innocence so that they can proceed with wrongful conviction claims before the United States Court of Federal Claims pursuant to 28 U.S.C. § § 1495, 2513. In its *habeas* opinion, this Court found "that this is the rare case in which Petitioners can prove their 'actual innocence' of the crime charged as well as violations of their constitutional rights at trial." *Eastridge v. United States*, 372 F. Supp. 2d 26, 29 (D.D.C. 2005). The United States opposes the petition, asserting that Petitioners are ineligible because they brought about their own prosecution by engaging in misconduct. The United States also argues that Mr. Damien's petition should be denied because he did not, and could not, receive habeas relief from the Court inasmuch as he had died in 2002, before the Court's decision. The Court agrees that it did not formally adjudicate Mr. Damien's innocence and it cannot, therefore, issue a Certificate of Innocence to his Estate. The Court will otherwise grant the petitions of Messrs. Eastridge and Sousa.

## I.  FACTS

Johnnie Battle, a Black man, was horribly stabbed to death by a group of White men in 1976 because of racial animus and alcohol. The crime occurred near Wisconsin Avenue and Ellicott Streets, N.W., Washington, D.C. Its racial overtones immediately captured the intense attention of the entire city.

Decedent Michael A. Damien, Joseph W. Eastridge, Stephen C. Jones, and Joseph N. Sousa were convicted in the Superior Court of the District of Columbia of first degree murder, while armed. Mr. Jones did not appeal his conviction. Messrs. Damien, Eastridge, and Sousa pursued – individually and collectively – numerous appeals for the entire time they were incarcerated. Mr. Damien died on December 10, 2002, while incarcerated at the Atlanta Federal Penitentiary. Mr. Sousa served twenty years in jail before being released on parole. Mr. Eastridge served twenty-nine years (including time for a prison assault on a guard) before being released on parole. For reasons fully explained in its earlier opinion, this Court granted the writ of habeas corpus to Messrs. Eastridge and Sousa under 28 U.S.C. § 2241. *See Eastridge*, 372 F. Supp. 2d at 29. The Court found them innocent of murder as principals and innocent of aiding and abetting. It also determined that the rule imposed by the trial judge regarding cross-examination and introduction of evidence violated their constitutional rights. Finally, it found that the prosecution had failed to release Grand Jury transcripts that contained exculpatory testimony, in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 813 S. Ct. 1194 (1963). The Court then set aside their convictions. In its decision, the Court commented that "Mr. Damien, a co-petitioner at the time initial briefing was completed, passed away on December 9, 2002. As a result, the habeas record and briefs do not focus on him. Presumably, the same analysis would apply." *See Eastridge*, 372

F. Supp. 2d at 29 n. 3. The Government filed a notice of appeal of the grant of *habeas* relief but then withdrew it. *See* Gov. Notice of Interlocutory Appeal [Dkt. #67] and Dismissal Order [Dkt. #68].

On April 17, 2008, Petitioners filed their Motion for Certificate of Innocence pursuant to 28 U.S.C. § 2513, the Unjust Conviction Act. In order to receive compensation based on an unjust conviction, a petitioner must prove:

> (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction . . . and
>
> (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513(a)(1)&(2). "A petitioner has the burden of proof showing an entitlement to the certificate," while "a district court judge has broad discretion in deciding whether or not to issue such a certificate." *Humphrey v. United States*, 52 Fed. Cl. 593, 597 (Fed. Cl. 2002), *aff'd*, 60 Fed. Appx. 292 (Fed. Cir. 2003) (citations omitted).

> Ideal justice would seem to require that in the rare and unusual instances in which a person has served the whole or part of a term or imprisonment, is later found to be entirely innocent of the crime of which he was convicted, should receive some redress. On the other hand, reversals in criminal cases are more frequently had on the ground of insufficiency of proof or on the question as to whether the facts charged and proven constituted an offense under some statute. Consequently, it would be necessary to separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatever.

*Burgess v. United States*, 20 Cl. Ct. 701, 704 (Cl. Ct. 1990)

## II. ANALYSIS

The United States does not dispute that Petitioners fulfill the requirements of 28

U.S.C. § 2513(a)(1): their convictions were reversed on the ground that they were not guilty of the offense of which they were convicted. It also does not dispute that they "did not commit any of the acts charged," as required by 28 U.S.C. § 2513(a)(2). It concentrates its argument on the last provision of § 2513(a)(2) and argues that both Petitioners, in varying ways, engaged in misconduct that caused or brought about their own prosecution. Petitioners dispute the government's interpretation of the statute and its analysis of the facts.

A. Statutory Interpretation

The Government argues that Section 2513(a)(2) is not satisfied because Petitioners' "actions and/or failure to act contributed to their prosecution and made it easy for the jury to convict them." Gov. Opp'n [Dkt # 72] at 20. Petitioners respond that there are only two elements to the legal standard and that they meet both: (1) the Court set aside their convictions based upon their actual innocence and (2) they did not commit the acts charged. Pet'rs Reply [Dkt # 75] at 4. According to Petitioners, the statute should be read:

> (2) He did not commit any of the acts charged **or** [a] his acts, deeds, or omissions in connection with such charged constituted no offense against the United States, or any State, Territory or the District of Columbia, and [b] he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513 (1948) (emphasis and insertion added). Only if a petitioner cannot prove that he did not commit any of the acts charged might he, as an *alternative*, prove what follows the "or," *i.e.*, none of his acts, deeds, or omissions in connection with the criminal charges constituted an offense against the United States or any State *and* he did not by misconduct or neglect cause or bring about his own prosecution. In other words, according to Petitioners, if they can prove that they did not commit any of the charged acts (already determined by the Court), they do not need to prove that

they did not in any way cause or bring about their own prosecution. Petitioners' reading of the statute may be reasonable, but in the Court's view, it is incorrect.

A brief exposition of the relevant case law sheds light on the dispute. In *Burgess v. United States*, the Claims Court described a prior case, *Hadley v. United States*, 106 Ct. Cl. 819 (Ct Cl. 1946), as holding that "construction of § 2513(a)(2) requires that the certificate of the court establishing [petitioner's] innocence must specifically recite (1) that [petitioner] did not commit any of the acts with which he was charged, *and* (2) that his conduct did not constitute a crime against the United States or against the sovereignty within which the acts were committed." 20 Cl. Ct. at 704 n.4 (emphasis in original). However, the Claims Court then continued: "In contrast, the Fifth Circuit has construed these necessary recitations as disjunctive. *See Osborn v. United States*, 322 F.2d 835 (5th Cir. 1963). The court need not reach the issue of whether these requirements should be interpreted as being disjunctive or conjunctive" since it would not affect Mr. Burgess's case. *Id.*

In contrast, the Fifth Circuit in *Osborn* clearly held that the "alternative conditions of § 2513(a)(2) require that the claimant show either that he did not commit any of the acts or that his acts constituted no offense against the United States or a State." *Osborn v. United States*, 322 F.2d at 841. The Fifth Circuit explained:

> We accept appellant's argument that the "or" in the statute means that he may prove either; he does not have to prove both. Logically, it would not be justifiable to require a claimant to prove both. If he did not commit the act charged it would be immaterial whether the act was unlawful, and conversely, if the act was not criminal it should make no difference whether he had done it.

*Id.* (citations omitted). Clearly, these rulings focus on a particular either / or question: if a petitioner can prove that "[h]e did not commit any of the acts charged," 28 U.S.C. § 2513(a)(2), then he does

not further have to prove that his acts "in connection with such charge" constituted no offense.

The question here is separate and distinct: whether, in addition to proving that he did not commit any of the acts charged or that his acts constituted no offense, a petitioner must also prove that his own misconduct or neglect did not cause or bring about his own prosecution. The Court finds that a petitioner must indeed do so.

As a matter of statutory text, the "and" preceding the language on misconduct strongly suggests that a petitioner *must also* prove that he did not cause or bring about his own prosecution. Moreover, even in cases cited by Petitioner, courts have separately analyzed the petitioner's own misconduct or neglect in bringing about his prosecution. In *Osborn* for example, after finding that the petitioner failed to satisfy either alternative prerequisite to recovery (i.e., that he did not commit the acts charged *or* that the acts in connection with the charge constituted no offense), Judge Wisdom also noted that the petitioner must show that his own misconduct or neglect did not bring about his prosecution as "this, however, is just what the statute requires." 322 F.2d at 843; *see also Betts v. United States*, 10 F.3d 1278, 1284 (7th Cir. 1993) (even though "factually innocent," petitioner must still show he did not bring about his prosecution through his own misconduct or neglect). The Court agrees that Petitioners must make an additional showing regarding their own misconduct or neglect in order to receive a Certificate of Innocence.

B. Analysis of the Facts

The Government contends that Petitioners engaged in "misconduct" that precludes the granting of a certificate of innocence because their "'acts before, during and after the murder . . . contributed to bring about their arrest or conviction.'" Gov. Opp'n at 21-22 (citing *Keegan*, 71 F. Supp. at 628). The Government cites the following instances of misconduct: Petitioners attempted

to help Mr. Jones[1] to escape; Mr. Jones adhered to the "Pagan Code" and refused to give information about other members of the Pagans and these Petitioners were complicit in his silence; Petitioners' conduct was tantamount to misprision of a felony, under D.C. Code § 5-121.05, because their silence assisted other Pagans to "escape full judicial examination by the withholding of any information about a felony," *see Butler v. United States*, 481 A.2d 431, 444-445 (D.C. 1984), *cert. denied*, 470 U.S. 552, 557-558 (1980); Petitioners' conduct constituted the offense of accessory after the fact because Mr. Sousa stopped the car and picked up Mr. Jones as he was running away; Mr. Sousa admitted to driving after consuming a large quantity of alcohol; Petitioners did not call the police to report a shooting or remain in the area; each Petitioner concealed a knife; and Mr. Eastridge was drunk in public in violation of D.C. Code § 25-1001(a). *See* Gov. Opp'n at 22-36. These arguments are totally unpersuasive.

"The statutory phrase 'in connection with such charge' was meant to preclude the proof of some contemporaneous, but unrelated crime to bar recovery." *See Osborn*, 322 F.2d at 842 (citing *Keegan*, 71 F. Supp. at 638). Much of the alleged "misconduct" on which the Government relies was, even if accurate, unrelated to the actual crime charged – first degree murder. Their drinking, Mr. Sousa's driving, their concealment of unused knives, their reliance on their Fifth Amendment rights to silence – none of these actions or omissions was related to the charged crime. The only issue at which one might pause[2] is whether Mr. Sousa's act of picking up Mr. Jones as he and Mr. Eastridge were driving around the blocks near Wisconsin Avenue (when neither Mr. Sousa

---

[1] At the evidentiary hearing held in this matter, Mr. Jones testified under oath that he had participated personally in the murder of Johnnie Battle.

[2] The Court's *habeas* opinion noted that Mr. Sousa's act of picking up Mr. Jones "might constitute the distinct and separate crime of accessory after the fact." 372 F. Supp. 2d at 56.

nor Mr. Eastridge had seen, participated in, or had knowledge of Mr. Battle's murder) could be sufficiently criminal and sufficiently related to the charge of first degree murder as to bar recovery.

The Court concludes that the Government over-reads the statutory requirement that a petitioner show that "he did not by misconduct or neglect cause or bring about his own prosecution," 28 U.S.C. § 2513(a)(2), under which the Government argues that Messrs. Sousa and Eastridge were accessories.[3] The Fifth Circuit, speaking through Judge Wisdom, again provides a more sensible and balanced interpretation of the statute than does the Government here: "Congress excluded from the operation of the remedial provisions of the statute those who, though innocent, had negligently or willfully failed to take the necessary measures to avoid conviction." *Osborn*, 322 F.2d at 843; *see also Betts*, 10 F.3d at 1285 ("The statute expressly requires a causal connection between the petitioner's conduct and his prosecution; it does not preclude relief simply because the petitioner engaged in misconduct or neglect, period.").

At this point, it is useful to recount the reasons the Court granted *habeas* relief to Messrs. Sousa and Eastridge. The Government's theory at trial was that, as Mr. Battle fled on foot, these Petitioners (together with Messrs. Jones and Damien) "gave chase, with their knives drawn, chasing . . . Mr. Battle up to Wisconsin Avenue, across Wisconsin Avenue, where Mr. Battle is seen tripping on a curb, falling backwards, with his arms up, and being stabbed repeatedly by these four defendants." *Eastridge*, 372 F. Supp. 2d at 28; *see id*. at 31 ("In less time than it takes to tell, Mr. Battle suffered seventeen knife wounds and was dead"). It is now clear, and the Government concedes, that Messrs. Eastridge, Sousa and Damien played no role in the murder. *See id*. at 32.

---

[3] The Court rejects the Government's argument that Mr. Eastridge was an accessory after the fact to *murder* because, in the car, he handed Mr. Jones a newspaper with which to wipe the blood off his hands. *See* Gov. Opp'n at 28.

"The shortcomings in the case against Petitioners were evident even to the prosecution at trial. Confronted with unanswered questions and evidentiary inconsistencies, the prosecution pressed an alternative aiding-and-abetting theory at the eleventh hour." *Id*. at 54; *see id*. ("the Government did not articulate an aiding-and-abetting theory until its closing argument"). Convicted of first degree murder nonetheless,

> Petitioners were sentenced to twenty years to life. Mr. Sousa served nineteen years in jail before being released on parole; Mr. Eastridge served twenty-nine years before being released on parole. The terms of their paroles include significant restrictions. They served this time as convicted murderers for a crime which it is more likely than not that no reasonable juror, based on the full evidentiary record, would find them guilty beyond a reasonable doubt.

*Id*. at 33. On appeal, unlike at trial, the Government acknowledged the existence of persons other than these Petitioners at the site of Johnnie Battle's murder but argued that a third group had followed in a car. *Id*. at 54. Thus,"[t]he role that the convicted persons played, Petitioners here, had become more hypothetical and the proof of their guilt more attenuated." *Id*. The Court found the Government's aiding and abetting theory "purely speculative." *Id*. at 56. Contrary to law, the Government was "seeking to sustain [Petitioners'] convictions of first-degree murder, a specific intent crime, on an aiding-and-abetting theory." *Id*. For these reasons, the Court concluded that no reasonable juror could find the Petitioners guilty of murdering Johnnie Battle. *Id*.

In addition to ruling that Petitioners proved their "actual innocence," the Court further found that an evidentiary ruling imposed by the trial judge interfered with their constitutional rights. *Id*. at 57-58. For reasons not clear from the record, the trial judge ordered that "'no lawyer [is] to ask any questions that would inculpate or exculpate any other defendant unless he cleared it with the defense attorney.'" *Id*. This Rule violated Petitioners' Fifth and Sixth Amendment rights because

it "prevented effective and necessary cross-examination of key Government witnesses." *Id.*[4] Constrained by this Rule at trial, the Government's argument that Petitioners brought about their

---

[4]

> As the 2004 Hearing made clear, Ms. Heim was a witness who had observed the shooting of Bruce Hunter and the beginnings of the subsequent chase of Johnnie Battle. Ms. Heim testified before the Grand Jury that Mr. Jones was one of the Pagans who chased Mr. Battle after the shooting. At trial, however, she testified on direct examination that she did not see the chase, and Mr. Sousa's attorney was barred from cross-examining her to establish that she did not name Mr. Sousa as one of the chasers before the Grand Jury but that she had named Mr. Jones. *See* Trial Tr. At 1757-58, 1810 (Grand Jury testimony read to court outside the presence of the jury). The trial judge refused to allow this cross-examination of Ms. Heim, which was clearly exculpatory evidence for the defendants other than Mr. Jones. *Id*. at 1807, 1811. At sidebar, the trial court also specifically denied a request by Mr. Sousa's lawyer to have Ms. Heim enumerate and identify the individuals she saw giving chase. *Id*. at 1807-08. Counsel identified at least seventeen different issues on which he wished to question Ms. Heim but was rebuffed by the court in each instance. Among other things, counsel wanted to question Ms. Heim about the statements made by Messrs. Barber and Jennings, who had reached the Richter house on foot. The court refused to allow this avenue of inquiry because it involved references to co-defendant Richter. After a bench conference covering twenty-four pages of trial testimony, Pamela Heim was dismissed without one single word of cross-examination directed to her.
>
> Likewise, the effective cross-examination of Ms. Willetts was precluded when Petitioners' attorneys were denied the right even to mention names of co-defendants to challenge her testimony. *Id*. at 1684-92. When Mr. Sousa's lawyer tried to cross-examine Ms. Willets about specific conversations as they related to both Messrs. Sousa and Eastridge, he was prohibited from doing so solely because this line of questioning would involve references to Mr. Eastridge. As noted by the trial judge later, "the Rule proved so restrictive to Sousa's attorney that he did not even attempt any cross-examination of a witness whose sworn testimony was very damaging to his client." *United States v. Eastridge*, 110 Wash. L. Rep. 1181, 1187 (1982). Yet Ms. Willets was the only person whose testimony directly implicated Mr. Sousa and Mr. Eastridge. *Id*.

*Eastridge*, 372 F. Supp. 2d at 58-59.

own prosecution by not doing more to exculpate themselves from the charge of first degree murder is completely without merit.

These Petitioners sat in prison for decades after a prosecution with shifting theories and an unconstitutional vise that severely restricted their trial defense. The Government clearly thought it had identified the men who killed Johnnie Battle. However, with the exception of Mr. Jones, it was wrong and these Petitioners paid dearly for that error. "Ideal justice would seem to require that in the rare and unusual instances in which a person who has served the whole or part of a term of imprisonment, is later found to be entirely innocent of the crime of which he was convicted, should receive some redress." *Burgess*, 20 Cl. Ct. at 704 . This is "the rare case." It would make a mockery of the Unjust Conviction Act if these Petitioners were denied a remedy for the unrelated misconduct upon which the Government rests its argument.

## III. CONCLUSION

The Court grants the petition for a Certificate of Innocence as to Messrs. Eastridge and Sousa. Mr. Eastridge and Mr. Sousa have demonstrated that they were actually innocent of the crimes for which they were convicted. Neither Mr. Eastridge nor Mr. Sousa committed any of the acts with which they were charged. Neither Mr. Eastridge nor Mr. Sousa, by misconduct or neglect, caused or brought about his own prosecution. A memorializing order accompanies this memorandum opinion.

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE: March 12, 2009